Thomas E. Butler, Esq.
Nicole A. Sullivan, Esq.
WHITE AND WILLIAMS LLP
7 Times Square, Suite 2900
New York, NY 10036
Tel: 212-714-3070
Fax: 212-631-4431
butlert@whiteandwilliams.com
*Attorneys for Mihir Bhansali*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In Re: | Chapter 11 |
| FIRESTAR DIAMOND, INC., et al., | Case No. 18-10509 (SHL) |
| Debtors. | (Jointly Administered) |
| | |
| RICHARD LEVIN, Chapter 11 Trustee of FIRESTAR DIAMOND, INC., FANTASY, INC., and OLD AJ, INC. f/k/a A. JAFFE, INC., | Adv. Proc. No. 20-01052-shl |
| Plaintiff, | |
| v. | |
| MIHIR BHANSALI and AJAY GANDHI, | |
| Defendants. | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MIHIR BHANSALI'S MOTION TO DISMISS THE ADVERSARY COMPLAINT**

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT .......................................................................................................... 3

   I.    LACK OF ALLEGATIONS OF ACTUAL INTENT TO HINDER, DELAY OR
       DEFRAUD ANY CREDITOR IS FATAL TO FRAUDULENT TRANSFER ................ 3

     A.   Pleading Details of Alleged Fraudulent Transfer Without More Is Insufficient ......... 3

     B.   Trustee Failed to Meet the Heightened Pleading Standard Necessary to Plead Actual
        Intent to Delay, Hinder or Defraud Creditors ............................................................. 4

     C.   Natural Consequences of Debtors' Actions Do Not Satisfy Heightened Pleading
        Standard ....................................................................................................................... 4

     D.   Absence of Badges of Fraud is Fatal to the Fraudulent Transfer Claim ..................... 7

  II.    IMPROPER CLAIM SPLITTING WARRANTS DISMISSAL HERE ............................ 8

 III.   THE FAITHLESS SERVANT CLAIM FAILS AS A MATTER OF LAW ................... 11

     A.   Failure to State a Claim ............................................................................................ 11

     B.   Mr. Bhansali's Alleged Misconduct is Not Substantial Because His Employer Knew
        of and Tolerated the Alleged Disloyal Behavior ...................................................... 11

     C.   Misconduct Does Not Rise to Level of Breach of Duty of Loyalty .......................... 13

     D.   The Hallmark of Faithless Servant Claim-Personal Benefit to Insider is Missing..... 14

     E.   *In Pari Delicto* is Applicable and Bars the Faithless Servant Claim......................... 15

     F.   The Faithless Servant Claim is Untimely ................................................................. 18

CONCLUSION..................................................................................................... 20

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Am. Intl. Group, Consol. Derivative Litig., Inc. v. Smith*,
  976 A.2d 872 (Del. Ch. 2009) ................................................................................ 20

*Aramony v. United Way of Am.*,
  No. 96 Civ. 3962 (SAS), 1998 U.S. Dist. LEXIS 5885 (S.D.N.Y. Apr. 27,
  1998) ......................................................................................................................... 14

*Armstrong v. McAlpin*,
  699 F.2d 79-87 (2nd Cir. 1983) ............................................................................. 22

*Branded Apparel Grp. LLC v. Muthart*,
  2018 U.S. Dist. LEXIS 153937 (S.D.N.Y. Sept. 10, 2018) ............................ 11, 13

*Bravin v. Fashion Week, Inc.*,
  342 N.Y.S. 2d 971 (Civil Ct, N.Y. Co. 1973) ........................................................ 15

*Brown v. Portizky*,
  30 N.Y.2d 289 (1972) .............................................................................................. 17

*Colliton v. Cravath*,
  2008 U.S. Dist. LEXIS 74388 (S.D.N.Y. Sep. 23, 2008) .................................. 21, 22

*Curtis v. Citibank, N.A.*,
  226 F.3d 133 (2d Cir. 2000) .................................................................................... 11

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*,
  596 B.R. 275 (Bankr. S.D.N.Y. 2018) .................................................................... 13

*Flaxer v. Gifford (In re Lehr Constr. Corp.)*,
  551 B.R. 732 (Bankr. S.D.N.Y. 2016) .................................................................... 18

*In re 45 John Lofts, LLC*,
  599 B.R. 730 (Bankr. S.D.N.Y. 2019) .................................................................. 6, 7

*In re CBI Holding Co., Inc.*,
  529 F.3d 432 (2d Cir. 2008) .................................................................................... 18

*In re Cohoes Indus. Term., Inc.*,
  69 B.R. 717 (Bankr. S.D.N.Y. 1987) ...................................................................... 13

*In re Dreier LLP*,
  452 B.R. 391 (Bankr. S.D.N.Y. 2011) .................................................................... 11

*In re Kaiser*,
    722 F.2d 1574 (2d Cir. 1983) ............................................................................6, 10

*In re Madoff Inv. Sec. LLC*,
    445 B.R. 206 ..............................................................................................................6

*In re Saba Enterprises, Inc.*,
    421 B.R. 626 (Bankr. S.D.N.Y. 2009) ...................................................................6, 7

*In re Tribune Co. Fraudulent Conveyance Litig.*,
    2019 U.S. Dist. LEXIS 10983 ...........................................................7, 18, 19, 20

*In re Tronox Inc.*
    429 B.R. 73 (Bankr. S.D.N.Y. 2010) ........................................................................6

*In re Tronox Inc.*,
    503 B.R. ......................................................................................................................9

*Interoceanica Corp. v Sound Pilots*,
    107 F.3d 86 (2d Cir. 1997) ......................................................................................13

*Kirschner v. Fitzsimons (In re Tribune Co. Fraudulent Conveyance Litig.)*,
    2017 U.S. Dist. LEXIS 3039 (S.D.N.Y. 2017) .........................................................7

*Kirschner v. J.P. Morgan Case Bank, N.A. (In re Millennium Lab Holdings II,
    LLC)*,
    2019 Bankr. LEXIS 636 (Bankr. D. Del. Feb. 28, 2019) ...........................6, 7, 8, 19

*Kirschner v. KPMG, LLP*,
    15 N.Y.3d 446 (2010) ..............................................................................................19

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
    797 F.3d 160 (2d Cir. 2015) ......................................................................................7

*Maharaj v BankAmerica Corp.*,
    128 F.3d 94 (2d Cir. 1997) ......................................................................................13

*Nestor v. Pratt & Whitney*,
    466 F.3d 65 (2d Cir 2006) .......................................................................................13

*Phansalkar v. Andersen Weinroth & Co., L.P.*,
    344 F.3d 184 (2d Cir. 2003) ....................................................................................14

*Ridgemour Meyer Props., LLC v. Goetz Fitzpatrick LLP (In re Ridgemour Meyer
    Props., LLC)*,
    791 Fed. Appx. 279 (2d Cir. 2020) .........................................................................19

*Sacerdote v. Cammack Larhette Advisors, LLC*,
  939 F.3d 498 (2d Cir. 2019)...................................................................................11

*Sama v. Mullaney (In re Wonderwork, Inc.)*,
  611 B.R. 169 (Bankr. S.D.N.Y. 2020) ....................................................................9

*SB Liquidation Trust v. Preferred Bank (In re Syntax-Brillian Corp.)*,
  2016 Bankr Lexis 988 (Bankr. D. Del. Feb. 8, 2016)...........................................8, 9

*SEC v First Jersey Sec., Inc.*,
  101 F.3d 1450 (2d Cir. 1996)................................................................................13

*SEC v Thompson*,
  238 F. Supp. 3d 575 (S.D.N.Y. 2017)...................................................................13

*Shamrock Assoc. v. Sloane*,
  738 F. Supp. 109 (S.D.N.Y. 1990) .......................................................................13

*Staudinger+Franke GmbH v. Casey*,
  2015 U.S. Dist. LEXIS 73912 (S.D.N.Y. June 6, 2015)..........................................9

*Sterling v. Deutsche Bank Natl. Trust Co.*,
  2019 U.S. Dist. LEXIS 140292 (S.D.N.Y. 2019)..................................................13

*Weisfelner v. Hofmann (In re Lyondell Chem. Co.)*,
  554 B.R. 635 (S.D.N.Y. 2016)............................................................................8, 9

**STATUTES**

11 U.S.C. § 548.......................................................................................................9

Fed. R. Bankr. P. §108(a) .......................................................................................22

Fed. R. Civ. P. 9(b) ...............................................................................................4, 7

Defendant, Mihir Bhansali, respectfully submits this Reply Memorandum of Law in Further Support of his Motion to Dismiss the Adversary Complaint (the "Second Proceeding") of Richard Levin as Chapter 11 Trustee of Firestar Diamond, Inc., Fantasy, Inc., and Old AJ, Inc. f/k/a. Jaffe, Inc., (the "Trustee"), and states as follows:

## PRELIMINARY STATEMENT

In his moving Memorandum of Law (the "Opening Memo"), Mr. Bhansali demonstrated that, while the Complaint is long and dense and includes a variety of allegations, it nevertheless failed to state a claim against Mr. Bhansali. On the contrary, the Complaint asserts random and sweeping allegations of wrongdoing that are almost identical to the complaint and amended complaint filed in Levin v. Modi, et al., Case No. 19-01102-shl (Bankr. S.D.N.Y. 2019) (the "First Proceeding") but do not amount to a cognizable claim. The crux of the Trustee's claims here is rooted in the repeated assertion that Mr. Bhansali was only paid his salary to ensure continuation of the purported fraud committed by the Debtors against Punjabi National Bank (the "Bank Fraud"). Without anything more than this self-serving supposition, the Trustee has failed to state either a claim for actual fraudulent transfer or faithless servant.

Allegations that Mr. Bhansali was paid a salary since 2012 to participate in the purported Bank Fraud repeated *ad nauseum* without any added substance is not sufficient to plead actual intent to hinder, delay or defraud creditors. The Trustee's conclusory supposition about Mr. Bhansali's compensation payments without more fails to satisfy the heightened pleading standard required under Rule 9(b). A close reading of the Complaint reveals that it completely fails to allege any intent, let alone fraudulent intend. To argue that Debtors' payments to Mr. Bhansali for compensation for his duties as the Debtors' CEO, including his participation in the Bank Fraud for the benefit of the Debtors, amounts to actual intent to hinder, delay or defraud creditors is the ultimate stretch of the pleading requirements – and the imagination. Ironically, the professionals

acting for the Debtors' estate here have earned significantly more in two years than Mr. Bhansali earned in six years.

The Faithless Servant claim also fails because it is duplicative of and identical to the pending breach of fiduciary duty claim in the First Proceeding. The Trustee's entire argument that he has plausibly alleged a faithless servant claim because Mr. Bhansali's conduct rose to the level of breaching his duty of loyalty is a concession that the faithless servant claim is duplicative of his breach of fiduciary duty claim. Based on this and that the same proof necessary to sustain his breach of fiduciary duty claim in the First Proceeding is needed here to prove Mr. Bhansali was a faithless servant, this is improper claim splitting warranting dismissal.

Even if this claim was appropriately asserted, it fails because the Complaint does not allege the quintessential elements of a faithless servant, *i.e.* one who stole or committed some other harm against the Debtors. Instead, the Trustee identifies personal payments from individuals he alleges were involved in the purported Bank Fraud and surmises that those payments – which have no ties to any Debtor – somehow show personal benefit to Mr. Bhansali at the Debtors' expense. Such extreme effort to stretch the allegations to fit the pleading requirements coupled with pure conjecture is simply insufficient to sustain a faithless servant claim. Additionally, the Trustee has repeatedly alleged that the purported Bank Fraud was continued by Mr. Bhansali for the benefit of the Debtors and their ultimate owner, Mr. Nirav Modi. As such, the alleged wrongdoing of the Debtors' officers is imputed to the Debtors and the claim is barred by the doctrine of *in pari delicto*. Finally, the Faithless Servant claim also fails because it is untimely and there is no exception that would allow the Trustee to toll the statute of limitations.

For all of these reasons, discussed in detail below, the Motion to Dismiss should be granted.

# ARGUMENT

**I.    LACK OF ALLEGATIONS OF ACTUAL INTENT TO HINDER, DELAY OR DEFRAUD ANY CREDITOR IS FATAL TO FRAUDULENT TRANSFER**

The sole basis for the Trustee's fraudulent transfer claim is his allegation that Debtors made the Bhansali **Transfers** to secure Mr. Bhansali's participation in the purported Bank Fraud, and thus, Mr. Bhansali acted in furtherance of the Bank Fraud in exchange for his compensation. Opp., pp. 8-22. This contention certainly does not meet the pleading standard. In fact, if that was all that was required to allege fraudulent transfer, then in every corporate bankruptcy there would be an adversary proceeding for fraudulent transfer. This is simply not the law.

### A.  Pleading Details of Alleged Fraudulent Transfer Without More Is Insufficient

While the Trustee argues that he adequately pled actual intent because he alleged the specific details of each transfer to Mr. Bhansali (Opp., p. 9-10), such details, without more, are not sufficient to allege actual intent and meet the heightened pleading standard. In fact, each of the cases cited by the Trustee found that additional allegations of intent were pled thereby allowing the fraudulent transfer claim to survive a motion to dismiss. *In re 45 John Lofts, LLC*, 599 B.R. 730, 741-43 (Bankr. S.D.N.Y. 2019) (finding that intent was properly pled because there were "extensive misconduct" allegations that fell within several badges of fraud); *In re Kaiser*, 722 F.2d 1574, 1582-84 (2d Cir. 1983) (finding that intent was obvious because transferred property to spouse and corporation owned by debtor); *In re Madoff Inv. Sec. LLC*, 445 B.R. 206, 220 (stating that "[i]t is now well recognized that the existence of a Ponzi scheme establishes that transfers were made with the intent to hinder, delay and defraud creditors"); *Kirschner v. J.P. Morgan Case Bank, N.A. (In re Millennium Lab Holdings II, LLC)*, 2019 Bankr. LEXIS 636, at *3-7 (Bankr. D. Del. Feb. 28, 2019) (alleging Ponzi scheme); *In re Saba Enterprises, Inc.*, 421 B.R. 626, 642 (Bankr. S.D.N.Y. 2009) (noting that several badges of fraud were pled); *In re Tronox Inc.* 429 B.R.

73, 92 (Bankr. S.D.N.Y. 2010) (finding that intent was properly pled because the complaint contained "numerous facts and allegations the deconstruct[ed] the specific transfers made the specific obligations taken on").

### B. Trustee Failed to Meet the Heightened Pleading Standard Necessary to Plead Actual Intent to Delay, Hinder or Defraud Creditors

"Rule 9(b) provides, '[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.'" *In re Tribune Co. Fraudulent Conveyance Litig.*, 2019 U.S. Dist. LEXIS 10983, at *28 (quoting Fed. R. Civ. P. 9(b)). "Under Rule 9(b), 'though mental states may be pleaded generally, Plaintiffs must nonetheless allege facts that give rise to a strong inference of fraudulent intent.'" *Id.* (quoting *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 171 (2d Cir. 2015)). "Claims of intentional fraudulent transfers, like claims of intentional fraud generally, are subject to the stricter standard of 'particularity.'" *In re 45 John Lofts, LLC*, 599 B.R. at 739. "A strong inference of fraudulent intent may be established either (1) by alleging facts demonstrating that the Defendants had both the motive and the opportunity to commit fraud or (2) by alleging facts that 'constitute strong circumstantial evidence of conscious misbehavior or recklessness.'" *In re Saba Enters.*, 421 B.R. at 642 (citations omitted). The pleading must either provide facts to infer that the natural consequence of the debtor's action was to hinder, delay or defraud creditors or sufficient to allege a confluence of typical badges of fraud. *Kirschner v. Fitzsimons (In re Tribune Co. Fraudulent Conveyance Litig.)*, 2017 U.S. Dist. LEXIS 3039, at *33 (S.D.N.Y. 2017). The Trustee has failed to do either.

### C. Natural Consequences of Debtors' Actions Do Not Satisfy Heightened Pleading Standard

It has been held that a court may infer an intentional fraudulent conveyance "[i]f the 'natural consequence of a debtor's action' is to hinder, delay or defraud creditors." *In re*

*Millennium Lab Holdings II, LLC*, 2019 Bankr. LEXIS 636, at *9 (citation omitted); *accord Weisfelner v. Hofmann (In re Lyondell Chem. Co.)*, 554 B.R. 635, 650-51, n.17 (S.D.N.Y. 2016). Relying on this principle, the Trustee argues that he has sufficiently pled actual fraudulent intent because the "natural consequence" of the Bhansali Transfers was that Mr. Bhansali would continue to conspire with Mr. Modi to commit the Bank Fraud, and thus, the Bhansali Transfers were made with actual fraudulent intent. Opp., p. 13. Again, the Trustee seeks to stretch an inapplicable principle to preserve a baseless claim.

Notably, none of the cases relied on by the Trustee involved recovering compensation payments made to an officer of the debtor in exchange for his continued participation in the fraudulent activity. The two primary cases relied on by the Trustee, which were both decided by the District Court of Delaware, are inapposite. While both cases involved alleged fraudulent schemes, neither sought recovery of the insider's salary or bonuses but rather sought to recover transfers that were allegedly made in furtherance of the alleged fraud itself. In *In re Millennium Lab Holdings, II, LLC*, 2019 Bankr. LEXIS 636, at *3-4, the debtor corporation received term loan proceeds in the amount of $35.3 million, which was paid, in part, as "dividends and/or bonuses" to controlling equity holders. The court held that "[s]eeking to maximize amounts paid to the Controlling Persons to improve their personal fortunes may evidence an intent to hinder, delay or defraud creditors and may show motivation to engage Defendants (and thus incur the obligation to pay the Fee) in order to obtain the term loan proceeds to award the Dividend." *Id*. at *12. The trustee there sought to recover, not the insider's compensation, but rather the specific fee in question that constituted the actual fraudulent conveyance. *Id*. at *4. In addition, *SB Liquidation Trust v. Preferred Bank (In re Syntax-Brillian Corp.)*, 2016 Bankr Lexis 988, at *3-4 (Bankr. D. Del. Feb. 8, 2016) involved an adversary proceeding alleging that the bank knew the insiders used

its financing and services to divert hundreds of millions of dollars to another company owned by some of the same insiders, ultimately leading to the debtors' insolvency. The trustee sought to recover the specific obligations paid by the debtors to the other company owned by the insiders and not the insiders' compensation. *Id.* at *6. The other cases cited by the Trustee are equally unpersuasive because, there, the fraudulent conveyances directly led to, or constituted, the depletion of the debtor's assets, unlike here. *See In re Tronox Inc.*, 503 B.R. at 279 (involving debtor's assets that were transferred out, leaving corporation with billions of dollars in tort liabilities); *In re Lyondell Chem. Co.*, 554 B.R. at 651 (involving grossly overstated projections that were relied on in a leveraged buyout, which ultimately stripped the debtor of its assets).

It is not a given – like the Trustee argues – that the natural consequence of paying Mr. Bhansali his compensation was to hinder, delay or defraud creditors. In fact, we have been unable to locate any case involving alleged fraudulent acts by an officer – including Ponzi schemes – where the Trustee sought to recover the officer's salary as an actual fraudulent transfer. Instead, cases discussing salary as a fraudulent conveyance assesses constructive fraudulent conveyance – not sought here – because salary payments are generally "presumed to be for fair consideration under New York's Debtor & Creditor Law ('NYDCL') § 272 for the purposes of NYDCL §§ 273-75 and reasonably equivalent value under 11 U.S.C. § 548." *Sama v. Mullaney (In re Wonderwork, Inc.)*, 611 B.R. 169, 208 (Bankr. S.D.N.Y. 2020); *Staudinger+Franke GmbH v. Casey*, 2015 U.S. Dist. LEXIS 73912, at *28-29 (S.D.N.Y. June 6, 2015) (stating that salary is "presumed to be made for fair consideration"). If the Trustee's theory was correct then any compensation to an insider purportedly involved in fraudulent activity could be deemed to be a fraudulent transfer, a stretch not supported in case law.

### D.  Absence of Badges of Fraud is Fatal to the Fraudulent Transfer Claim

The Trustee also failed to adequately plead badges of fraud sufficient to satisfy the heightened pleading of intent. While the Trustee generally states that he alleged a confluence of several badges and recites the badges, he fails to cite to a single paragraph in the Complaint that supports the presence of any of badges of fraud. Opp., pp. 17-19. Instead, the Trustee reiterates, once again, that the Bhansali Transfers were completed simply to prolong the Bank Fraud. This in and of itself is not sufficient to allege a confluence of badges of fraud. There is also no inference that can be made from the allegations, and no actual facts pled that supports the contention, that each of the Debtors was insolvent before each of the compensation payments to Mr. Bhansali beginning in 2012 or even 2017. Thus, his reliance on *In re Kaiser*, 722 F.2d 1574, where certain badges of fraud were actually alleged, is unavailing.

Moreover, the mere allegation that the purported Bank Fraud resulted in Debtors' insolvency does not support the claim that compensation payments to Mr. Bhansali were made with actual fraudulent intent. The Trustee's effort to shoehorn these reasonable compensation payments – 158 in total – made to Mr. Bhansali in consideration for his running the Debtors' entire businesses into an intentional fraudulent transfer is absurd. The Trustee cannot avoid dismissal by arguing that generalized allegations of a fraudulent scheme without anything more is sufficient to allow this case to proceed. Not surprisingly, there is no case cited by the Trustee or found by Mr. Bhansali that supports such a sweeping proposition, which makes a mockery of well-worn pleading requirements. Finally, the Trustee's failure to seek as fraudulent transfers the wages of all officers of Debtors on the basis that those employees – unlike Mr. Bhansali – allegedly did not control the Debtors while also alleging that <u>only</u> Mr. Modi controlled the Debtors is further evidence that the Trustee is simply seeking to punish Mr. Bhansali and bury him in unending litigation. This simply should not be countenanced.

Finally, the Trustee's attempt to avoid the consequences of his failure to allege that the compensation payments lacked consideration by arguing "consideration is ultimately irrelevant" is another example of his penchant for stretching legal principles to the breaking point. Opp., p. 20. The sole case relied on by the Trustee ultimately held that when actual intent to defraud was adequately pled because the allegations were that the debtor engaged in a Ponzi scheme, this is sufficient without more to survive a motion to dismiss. *In re Dreier LLP*, 452 B.R. 391, 424, 435 (Bankr. S.D.N.Y. 2011). The same is not true here where, as discussed *supra*, the Trustee has failed to plead actual fraudulent intent, and thus, his additional failure to plead a lack of consideration is not only relevant, but warrants dismissal.

## II.    IMPROPER CLAIM SPLITTING WARRANTS DISMISSAL HERE

"[A] plaintiff has 'no right to maintain two actions on the same subject in the same court, against the same defendant at the same time.'" *Sacerdote v. Cammack Larhette Advisors, LLC*, 939 F.3d 498, 504 (2d Cir. 2019) (quoting *Curtis v. Citibank, N.A.*, 226 F.3d 133, 139 (2d Cir. 2000)). Yet that is exactly what the Trustee is seeking to do here.

No one disputes that it is within the District Court's discretion whether dismissal of the Second Action is warranted taking into consideration the interest of "'foster[ing] judicial economy,' 'protect[ing] the parties from vexatious and expensive litigation,' and ensuring the 'comprehensive disposition of litigation.'" *Id.* (quoting *Curtis*, 226 F.3d at 138). When analyzing whether a second suit is duplicative "[t]he inquiry focuses on 'whether the underlying facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations.'" *Branded Apparel Grp. LLC v. Muhart*, 2018 U.S. Dist. LEXIS 153937, *8-9 (S.D.N.Y. Sept. 10, 2018) (citations omitted). Thus, a suit may be duplicative where 'the same proof is needed to support the claims in both suits' or 'facts essential to the second suit were present in the first.'" *Id.*

This is a classic case of improper duplicative litigation and claim-splitting. The same parties are involved in both proceedings and both proceedings are currently pending before the same court. The same alleged wrongdoing is at the crux of both actions – the Trustee even admits that the Bank Fraud underlies both actions. Opp., p. 30. The same facts, witnesses and documents will be necessary to prosecute all the claims alleged in both proceedings. The same proof is needed to support the claims in both proceedings. In addition and significantly, the facts underlying the second proceeding were present and known to the Trustee when he filed the First Proceeding and his amended complaint in the First Proceeding.

In fact, it is undisputed that all facts needed to bring the claims in the Second Proceeding were known to the Trustee prior to filing the First Proceeding. Yet, the Trustee offers no explanation for why he did not bring these causes of action in the original complaint or its amendment. The Trustee argues this is not a typical claim splitting case because discovery has not begun in the First Proceeding and he is not barred from bringing these claims. Opp., p. 33. This is, in fact, a red herring. The Trustee filed the Second Proceeding to hedge his bets should the First Proceeding be dismissed. He filed the Second Proceeding one day before he alleges the statute of limitations expired on his faithless servant claim (Opp., p. 28) to ensure that if the First Proceeding is dismissed, he can still pursue a remedy against Mr. Bhansali.

In an attempt to save the Second Proceeding, the Trustee simply argues that the Second Proceeding should survive because he "has to prove elements that are not required in, and are indeed irrelevant to, the [First Proceeding]" and, in particular, identify the compensation payments made to Mr. Bhansali by the Debtors. Opp., pp. 31-32. This argument is baffling. What the Trustee ignores is that he is required to prove those different "elements" with the identical facts and evidence needed to prove the "elements" of the claims asserted in the First Proceeding. In fact, the

Trustee argues he plead the faithless servant claim because Mr. Bhansali's conduct rose to the level

of a breach of duty of loyalty (Opp., p. 24) and points to the same allegations to support both

causes of action. Specifically, that Bhansali: 1) created a spreadsheet outlining the alleged

fraudulent schemes; 2) researched and implemented various means of deleting, encrypting, or

preventing the creation of electronic data; 3) traveled overseas with Nehal Modi to intimidate and

manipulate potential witnesses, destroy evidence, and remove valuable assets; 4) made false and

misleading statements in the course of the Chapter 11 proceeding; 5) stayed in touch with Nirav

Modi after the bankruptcy filing; and 6) orchestrated the diversion of Debtor and affiliate assets

overseas. FAC ¶¶ 61-66, 68, 84-91, 161, 103-28, 129-41, 175, 177-87; Compl. ¶¶ 78, 97, 98-135,

165-78.

This is exactly the type of case that is dismissed because it is improper claim splitting. *See*

*Branded Apparel Group LLC*, 2018 U.S. Dist. LEXIS 153937 at \*10.[1] The Trustee, it appears, is

simply a vexatious litigant incurring significant billable hours instead of actually paying the

Estate's monies to lawful creditors and bringing multiple actions arising from the same nucleus of

facts and parties to entangle Mr. Bhansali in a legal nightmare.

---

[1] The cases relied on by the Trustee (Opp., pp. 30-31) do not save this action from dismissal. The cases are inapposite in that they either involved claims that relied upon different evidence, events that occurred after the first action was filed, where second action was filed after the first became final or otherwise where claim splitting was not substantively discussed. *See e.g.*, *see Interoceanica Corp. v Sound Pilots*, 107 F.3d 86, 91 (2d Cir. 1997) (involving "distinct voyages after those litigated" in the prior action and not "arising out of the same 'transaction or connected serious of transactions'"); *Maharaj v BankAmerica Corp.*, 128 F.3d 94, 97 (2d Cir. 1997) (involving events occurring after the filing of the first complaint); *SEC v First Jersey Sec., Inc.*, 101 F.3d 1450, 1464 (2d Cir. 1996) (same); *Nestor v. Pratt & Whitney*, 466 F.3d 65, 71 (2d Cir 2006) (involving filing of a federal action after the state action became final); *SEC v Thompson*, 238 F. Supp. 3d 575, 588 (S.D.N.Y. 2017) (involving claims in the second action that "were not, and could not have been" raised in the first action); *Shamrock Assoc. v. Sloane*, 738 F. Supp. 109, 116-117 (S.D.N.Y. 1990) (involving "facts of the alleged violations" that were "sufficiently different in both content and form"); *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, 596 B.R. 275, 292 (Bankr. S.D.N.Y. 2018) (involving different transactions with different evidence); *In re Cohoes Indus. Term., Inc.*, 69 B.R. 717, 721 (Bankr. S.D.N.Y. 1987) (involving claims that were "separate and independent"); *Sterling v. Deutsche Bank Natl. Trust Co.*, 2019 U.S. Dist. LEXIS 140292, at \*17 (S.D.N.Y. 2019) (denying claim splitting because defendant did "not make citation to any binding authority").

### III.   THE FAITHLESS SERVANT CLAIM FAILS AS A MATTER OF LAW

#### A.  Failure to State a Claim

To properly allege a faithless servant claim, the parties agree that the Trustee must meet one of two standards: (1) the "misconduct and unfaithfulness . . . substantially violates the contract of service"; or (2) misconduct that rises to the level of a breach of a duty of loyalty or good faith. Opp. pp. 22-23. The misconduct is not substantial where the employer "knew of and tolerated" the alleged disloyal behavior. *Phansalkar v. Andersen Weinroth & Co., L.P.*, 344 F.3d 184, 202 (2d Cir. 2003). Once again, if the Court were to accept the Trustee's argument here, anytime an insider of a corporation is alleged to have committed any wrongdoing, he or she could be categorized as a faithless servant warranting return of all compensation payments. This is simply not the law.

#### B.  Mr. Bhansali's Alleged Misconduct is Not Substantial Because His Employer Knew of and Tolerated the Alleged Disloyal Behavior

An employer that learns of a disloyal act may fire an employee based on that act, but an employer may not let the employee keep working, obtain the benefits of his service and then later seek to claw back compensation based on conduct that the employer was aware of earlier but chose not to act upon. *See Phansalkar*, 344 F.3d at 202 (stating that the faithless servant remedy is not available where the "employer knew of and tolerated the behavior"); *Aramony v. United Way of Am.*, No. 96 Civ. 3962 (SAS), 1998 U.S. Dist. LEXIS 5885, at *36-37 (S.D.N.Y. Apr. 27, 1998) (stating that an employer may waive its right to seek disgorgement under the faithless servant doctrine if it knew about the purportedly faithless act and failed to terminate the employee immediately). But that is exactly what the Trustee seeks to do.

Here, it is undisputed that Mr. Bhansali's employer was the Debtors, for which Mr. Modi is the majority shareholder as well as the orchestrator of the alleged Bank Fraud. Compl. ¶¶ 15, 20, 38. While the Trustee would prefer to dissociate the Debtors from their ultimate owner, Mr.

Modi, he cannot do so. He also cannot argue on the one hand that "Mr. Bhansali was the CEO and sole director of the Debtors, he "served as Modi's right-hand man and *de facto* second-in-command . . . ." (Opp., p. 24) and yet on the other hand, Mr. Bhansali was "not a lower level employee just following the orders of his boss" who "pretends that he had no control over his own actions." Opp., p. 25. Even the allegations of the Complaint show that Mr. Bhansali acted at the direction of Mr. Modi and for the benefit of Mr. Modi's interest in the Debtors and other non-Debtor companies. The Trustee's conclusory argument that Mr. Bhansali had independent control and could have bucked Mr. Modi's directions is pure speculation and unsupported by any allegation.

The Trustee relies only on the New York Civil Court decision in *Bravin v. Fashion Week, Inc.*, 342 N.Y.S. 2d 971 (Civil Ct, N.Y. Co. 1973) to argue that this is not an instance in which the employer "tolerated" the alleged wrongdoing. Opp., p. 23. In *Bravin*, the court decided whether an employee discharged for cause is entitled to severance and held:

> Defendant's papers fail to demonstrate a refusal on the part of the plaintiff to perform a substantial, material part of the contract of employment to the detriment of the employer. Consequently, if the plaintiff has completed the services required of him, then his letter-writing faults, no matter how obnoxious or obscene, may not be used to defeat his right to earned compensation upon discharge from employment.

342 N.Y.S.2d 971. Similarly here, there is no allegation that Mr. Bhansali refused to perform his employment duties to the detriment of any of the Debtors. In fact, for many years, the alleged wrongdoing was not only for the benefit of Debtors and their majority owner but also at Mr. Modi's direction. Since Debtors knew of and tolerated the alleged wrongdoing by Mr. Bhansali, the Trustee standing in the shoes of the Debtors cannot now assert he was a faithless servant and claw back from him his earned compensation. This is particularly true here, where the alleged fraudulent activity was committed on behalf of and not against the Debtors. This is simply not sufficient to plead a faithless servant claim.

-12-

### C.  Misconduct Does Not Rise to Level of Breach of Duty of Loyalty

In an effort to save the claim, the Trustee argues that he has met the second standard because "there is no question of whether Bhansali's breach was 'substantial,'" and thus, "'rises to the level of a breach of a duty of loyalty or good faith." Opp., p. 24. This argument fails.

First, similar to Count 2 for Breach of Fiduciary Duty in the First Proceeding where the Trustee alleges that Bhansali breached his fiduciary duty by "causing the Debtors to engage in the Bank Fraud" (FAC ¶ 206), the Trustee alleges here that Mr. Bhansali was a faithless servant by "knowingly, intentionally, and purposefully participating in the Firestar criminal enterprise" (Compl. ¶¶ 205-212). For all the reasons argued in the motion to dismiss the breach of fiduciary duty claim in the First Proceeding (D.E. 38-40), there is no claim here either. Evidencing how weak his opposition is to this argument, the Trustee relegates his response to this ground for dismissal to a footnote in his opposition brief. Opp., p. 33, n. 8.

Second, the only support proffered for the breach of duty of loyalty here that "[Mr.] Bhansali's breach was 'substantial'" is that "his orchestration of the 'systematic diversion of the U.S. Entities assets to overseas Modi-Controlled Entities . . . in combination with the fraudulent omissions and misrepresentations Gandhi and Bhansali made in the context of these chapter 11 cases, constituted millions of dollars of actual fraudulent transfers and impaired the recovery of loan receivables of the Debtors and the U.S. Affiliates." Opp., p. 24 (citing Compl. ¶ 178). Yet rather than pursue these millions of dollars of actual fraudulent transfers, the Trustee seeks to disgorge Mr. Bhansali of the alleged $1,155,940.76 he received as compensation. The Trustee also fails to inform the Court that any alleged omissions or misrepresentations by Mr. Bhansali were done after he resigned from each of the Debtors. Both of which show the insufficiency of the pleading. And, even if this arguably pled a faithless servant claim, it is clearly then duplicative of the breach of fiduciary duty claim in the First Proceeding warranting dismissal.

-13-

Finally, the Trustee's argument that "Modi's own breach of fiduciary duty does nothing to excuse Bhansali from his own independent duties [because] [a] wrongdoing agent cannot rely on concurrent misdeeds of other agents as a shield to their own misconduct" (Opp., p. 25) also fails. The only case cited by the Trustee, *Brown v. Portizky*, 30 N.Y.2d 289, 294 (1972), is inapposite. In *Brown*, the court addressed whether the contributory negligence of a general agent tasked with obtaining fire insurance for the plaintiff absolved his insurance agent of any liability when he also failed to obtain the fire insurance as promised. *Id*. The court held that "[s]ound policy dictates that a special agent who breaches a duty owed to his principal should not be insulated from liability by the fortuitous happenstance of a general agent's concurrent negligence." *Id*. at 294. Mr. Modi is not in a comparable position to the principal in *Brown*, who was "victimized by two careless agents." *Id*. Mr. Bhansali can hardly be found to have "victimized" Mr. Modi by allegedly following his instructions. To try to analogize that holding to the facts here is yet another stretch of precedent that demonstrates that the Trustee has no basis for maintaining this claim. Moreover, Mr. Bhansali did not argue that he is insulated from liability because Mr. Modi acted negligently toward the Debtors. Rather, Mr. Bhansali has argued that he is not a faithless servant to the Debtors because Mr. Modi – who is the Debtor's majority shareholder and was Mr. Bhansali's boss – was the orchestrator and director of all the alleged negligent acts committed against the Debtors by Mr. Bhansali.

### D.  The Hallmark of Faithless Servant Claim-Personal Benefit to Insider is Missing

This is simply not a prototypical faithless servant claim because there are no allegations that Mr. Bhansali stole from any Debtor for his own benefit. General allegations that Mr. Bhansali benefitted from the Bank Fraud by receiving payments directly from certain individuals and various Modi-controlled Entities allegedly involved in the purported Bank Fraud and not the Debtors (Opp. pp. 24-25, n.5) do not support a claim that he stole from any Debtor for his own

benefit. The Trustee's desperation here is clear when he alleges Mr. Bhansali personally benefitted himself because the Debtors allegedly transferred money to a company where he has no ownership interest but is owned by his wife. There is no basis in law for this argument. Nor does Mr. Bhansali receiving compensation payments from the Debtors allegedly in exchange for his continued employment and participation in the purported Bank Fraud amount to Mr. Bhansali stealing from the Debtors. *Flaxer v. Gifford (In re Lehr Constr. Corp.)*, 551 B.R. 732, 743 (Bankr. S.D.N.Y. 2016) (noting that "the prototypical faithless servant [] [is] the employee who steals from the company for his own benefit . . . .").

Here there simply is no personal gain by Mr. Bhansali from the alleged fraudulent activity. In fact, there are no allegations that Mr. Bhansali benefitted personally from the purported Bank Fraud. Thus, the Trustee's hyper focus on this fallacy is clearly intended to prejudice the Court against Mr. Bhansali and is not based on any fact. Without allegations of any personal benefit, there is no basis in law to disgorge Mr. Bhansali of his compensation.

### E.  *In Pari Delicto* is Applicable and Bars the Faithless Servant Claim

The Trustee mistakenly argues that Mr. Bhansali cannot impute his misconduct to the corporation and invoke *in pari delicto* because he "misappropriate[ed] the Debtors' assets and commit[ed] actual fraud against the Debtors' creditors, including PNB directly injured the Debtors." Opp., p. 26. Under New York law, there is a narrow exception from *in pari delicto* where "'management misconduct will not be imputed to the corporation if the officer acted entirely in his own interests and adversely to the interests of the corporation.'" *In re Tribune Co. Fraudulent Conveyance Litig.*, 2019 U.S. Dist. LEXIS 10983, at *46 (quoting *In re CBI Holding Co., Inc.*, 529 F.3d 432, 448 (2d Cir. 2008)). "This is a narrow exception. In order for it to apply, the manager must have '**totally abandoned**' his corporation's interests." *Id.* at *47 (emphasis added).

In fact, "New York law 'reserves this most narrow of exceptions for those cases – outright theft or looting or embezzlement – where the **insider's misconduct benefits only himself or a third party**; *i.e.*, where the fraud is **committed against a corporation rather than on its behalf**.'" *Id.* (quoting *Kirschner v. KPMG, LLP,* 15 N.Y.3d 446, 466-467 (2010)) (emphasis added); *see also Ridgemour Meyer Props., LLC v. Goetz Fitzpatrick LLP (In re Ridgemour Meyer Props., LLC)*, 791 Fed. Appx. 279, 281 (2d Cir. 2020) ("New York State courts and courts within our circuit have applied exceptions to *in pari delicto* narrowly."). In *Kirschner*, the Court of Appeals thoroughly explained the policies underlying the imputed knowledge doctrine:

> '[O]f necessity, corporations must act solely through the instrumentality of their officers or other duly authorized agents.' . . . 'The risk of loss from the unauthorized acts of a dishonest agent falls on the principal that selected the agent.' . . . . Agency law presumes imputation even where the agent acts less than admirably, exhibits poor business judgment, or commits fraud. As we explained long ago, a corporation 'is represented by its officers and agents, and their fraud in the course of the corporate dealings [] is in law the fraud of the corporation.' Like a natural person, a corporation must bear the consequences when it commits fraud.
>
> [ . . .]
>
> Next, the presumption that agents communicate information to their principals does not depend on a case-by-case assessment of whether this is likely to happen. Instead, it is a legal presumption that governs in every case, except where the corporation is actually the agent's intended victim. **Where the agent is defrauding someone else on the corporation's behalf, the presumption of full communication remains in full force and effect**.
>
> In sum, we have held for over a century that all corporate acts-including fraudulent ones-are subject to the presumption of imputation.

15 N.Y.3d at 465-66 (emphasis added) (citations omitted).

In *In re Tribune Co. Fraudulent Conveyance Litig.*, the court noted that the Trustee would need to show that in order to not impute the insider's wrongdoing to the corporation for purposes of *in pari delicto*, the "Defendants acted '**solely** to advance [their] own personal financial interest,

rather than that of the corporation itself.[2] 2019 U.S. Dist. LEXIS 10983 at *82 (quoting *Am. Intl. Group, Consol. Derivative Litig., Inc. v. Smith*, 976 A.2d 872, 891 (Del. Ch. 2009)) (emphasis added). The Court then held that *in pari delicto* barred the claims because the complaint alleged that the company benefitted and noted:

> the in pari delicto doctrine would be gutted if it allowed the corporation to recover for the harm that it experienced 'because the corporate action was motivated at least in part by the disloyal interests of the [corporation's] fiduciaries.' 'Allowing corporations to sue co-conspirators whenever such an argument can be ginned up would give corporations a gaping exception from the in pari delicto doctrine, putting them on a different plane from actual human beings.'

*Id.* at *82-83 (quoting *AIG*, 976 A.2d at 891).

Here, while the Trustee alleges the purported Bank Fraud resulted in Debtor's insolvency, it is undisputed that the alleged misconduct was committed on behalf of the Debtors and not against the Debtors. In both proceedings, the Trustee has alleged that Mr. Bhansali acted at the direction and orchestration of Debtors' majority shareholder, Mr. Modi, for the benefit of Debtors, Mr. Modi and other Modi-related entities. *See* FAC ¶ 61, 190 (alleging "Modi's total ultimate control over the Debtors" and "Bhansali and Gandhi[] [acted] at the direction of and in coordination with Nirav Modi . . . "); Compl. ¶¶ 15, 52 (alleging "Nirav Deepak ("Modi"), the former indirect controlling majority shareholder and/or de facto director, officer or controlling person of the Debtors" and "Bhansali and Gandhi[] [acted] at the direction of and in coordination with Nirav Modi . . ."). While the Trustee has made allegations that Mr. Bhansali was involved in the Bank Fraud, this does not absolve the Debtors of responsibility. Under the doctrine of imputed knowledge, the Debtors are squarely accountable for the allegedly nefarious conduct of their leading executives,

---

[2] *In re Tribune Co. Fraudulent Conveyance Litig.*, applied Delaware law and noted that Delaware and New York law are substantially similar. 2019 U.S. Dist. LEXIS 10983, at *46.

Mssrs. Modi, Bhansali and Gandhi. Thus, imputation of Mr. Bhansali's misconduct to the Debtors to invoke *in pari delicto* is proper and warrants dismissal.

### F.  The Faithless Servant Claim is Untimely

The Trustee argues that the statute of limitations should be "tolled," purportedly because "the corporation has been looted by persons who completely dominated and controlled it." (Opp. p. 27). This contention is inconsistent with the claims asserted in his Complaint and otherwise contrary to established law.

The Trustee contends the limitation period should be tolled until he was appointed as Trustee because of Mr. "Bhansali and his co-conspirators' domination over the Debtors and ability to control the disposition of their property." Opp., p. 27. This is perplexing given that the Trustee has not alleged Mr. Bhansali had complete domination and control over Debtors but rather has alleged that Mr. Modi orchestrated and directed the Bank Fraud and that at the direction and control of Mr. Modi, Mr. Bhansali participated in the Bank Fraud. Compl. ¶¶ 15, 20-23, 52. This is similar to the allegations asserted by the Trustee in the First Proceeding wherein he alleged that Mr. Bhansali breached his fiduciary duty to the Debtors by allowing Mr. Modi to usurp his management functions. FAC ¶ 205. The Trustee cannot impute Mr. Modi's control over the Debtors to Mr. Bhansali in an effort to save his time barred claims.[3] In *Colliton v. Cravath*, 2008 U.S. Dist. LEXIS 74388, at *19 (S.D.N.Y. Sep. 23, 2008), in considering a motion to dismiss an amended complaint, the court stated that a plaintiff may not "blatantly change his statement of the facts in order to respond to the defendant['s] motion to dismiss . . . [and] directly contradict[] the facts set forth in his original complaint." Moreover, the Trustee cannot have it both ways: arguing

---

[3] The Trustee does not cite to one case that would allow him to impute an alleged co-conspirator's domination and control to another defendant to toll the statute of limitations. Without such imputation, there is no basis in fact or law that would allow the Trustee to toll the limitations period, and thus, dismissal is warranted.

on the one hand that Mr. Modi's own negligence cannot absolve Mr. Bhansali from liability as a faithless servant and, on the other hand, contending that Mr. Modi's control can be imputed to Mr. Bhansali to allow the Trustee to do an end run around the statute of limitations. It is clear based on the Trustee's own allegations in both proceedings that Mr. Bhansali did not completely dominate or control Debtors, and thus, this limited exception does not save the time barred claim.

In any event, the Trustee's argument is not supported by law. In *Armstrong v. McAlpin*, 699 F.2d 79-87 (2nd Cir. 1983) the court stated that "[b]efore this doctrine can be applied, [] the plaintiff has the burden of showing 'a full, complete and exclusive control in the directors or officers charged.'" There, the Second Circuit also determined that vague allegations that companies "upon information and belief" are under the domination and control of an individual and that individual perpetrated "most of the abuses cited in the complaint" are insufficient and demonstrate only "how far short the allegation falls of alleging 'full, complete and exclusive' control by any defendant . . . so as to toll the running of the statute of limitations." *Id.* at *88-89. The Complaint does not even go as far as the allegations in *Armstrong* that the Second Circuit found completely lacking. On the contrary, the Trustee actually only alleges domination on the part of *Mr. Modi* in both proceedings. *See e.g.*, Compl. ¶ 15 and FAC ¶ 190. Nevertheless, the Trustee asserts this allegation against *Mr. Bhansali* this time in a futile effort to apply a doctrine that has no applicability here and to save his time barred claims. Indeed, not only does the Complaint fail to allege that Mr. Bhansali exercised "complete control" over the Debtors, but it also fails to allege with any particularity that Mr. Bhansali "looted" the Debtors.

The Trustee's reliance on §108(a) of the Bankruptcy Code is equally misguided. Section 108(a) applies when a Debtor's time to commence the proceeding had not expired before the date

of the petition's filing. Here again, the statute of limitations for the majority of the Bhansali

Transfers expired long before the petition was filed. Thus, there was nothing to extend.

## **CONCLUSION**

For all the reasons stated in the Opening Brief and herein, Mr. Bhansali respectfully

requests that the Complaint be dismissed.

Dated:  New York, New York
        July 17, 2020

**WHITE AND WILLIAMS LLP**

*/s/ Nicole A. Sullivan*
Thomas E. Butler, Esq.
Nicole A. Sullivan, Esq.
7 Times Square, Suite 2900
New York, NY 10036
Tel: 212-714-3070
Fax: 212-631-4429
butlert@whiteandwilliams.com
*Attorneys for Mihir Bhansali*
